Thank you, Your Honor. May it please the Court, Deputy Attorney General Randall Murphy, on behalf of Appellants. This case is an unprecedented event. Institutional reform lawsuits are not uncommon against the State of California and its agencies and its officials. However, in those cases, it is very unusual and, to our recollection, unprecedented that when instituting a new statute, those State employees seeking to enforce and institute such statute shall be sued in their individual capacities by plaintiffs seeking monetary damages against them for their attempt to implement the statute. Are they doing anything other than implementing State law? No, Your Honor. That is why the Qualified Immunity Defense has been presented at this stage of the litigation. It is not uncommon for Qualified Immunity to be raised against a dismissal, a motion to dismiss a complaint. This is very common, in fact. The Qualified Immunity Defense requires that a constitutional right be alleged against the defendant of which is applicable to those alleging that the defendant has violated that constitutional right. Okay. And your position is? Our position is that for the plaintiff's, appellee's causes of action in the second amended complaint, they have not alleged violation of a constitutional right which applies to them as against the defendants. Can you explain to me, okay, this is a motion to dismiss, right? Yes, Your Honor. It's not a summary judgment. Yes, Your Honor. It's based on the pleadings. Yes, Your Honor. This case was originally filed in 1998. Yes, Your Honor. What has been going on that it's now, the appeal was filed in 2003. Yes, Your Honor. If the case is as simple as you say, as a matter of just allegations in the complaint, why did it sit around and what was going on in the district court and why is it so old and why isn't something happening? The procedural history is set out in both the opening and answering briefs. What has occurred is initially the class of sexually violent predators filed the complaint in pro per. That complaint was then, they were requested to have counsel appointed for them. The law firm of Latham and Watkins was appointed to represent this class. They filed the first amended complaint on or about September 1, 1999. That first amended complaint was 12 v. 6 and the motion to dismiss that first amended complaint was denied by the court on or about August of 2000. Then discovery proceeded. In the course of discovery, 300,000 pages or more of documents have been produced, numerous interrogatories, requests for admissions, depositions have been taken. In about 2002 May, the plaintiffs sought to add Melvin Hunter, the new executive director at Atascadero State Hospital, as a defendant in his individual capacity. The court granted plaintiffs motion to file a second amended complaint adding Mr. Hunter in his individual capacity. The second amended complaint was filed and served on defendants on or about I believe the end of September 2002. The defendants filed a motion to dismiss that second amended complaint based on changes of the law. Since the original motion to dismiss the first amended complaint had been filed three years previous because the second amended complaint had alleged a series of as-applied constitutional violations, chief among them being ex post facto, double jeopardy, the Eighth Amendment and Sixth Amendment violations. Alleging defendants had violated those constitutional provisions and thereby entering into Section 1983 jurisprudence. The defendants filed their motion to dismiss this complaint on or about and I'm sorry I don't remember the exact date on that but the dismissal, thank you your honor, the denial of that second motion was entered I believe on or about August 26th of 2003. The defendants filed a timely notice of appeal to this court. Briefing took place, briefing was completed to this court on or about July 17th of 2004 and that brings us to today. Well let me ask you this, I have rarely seen an Eighth Amendment claim against a prison official dismissed on a 12b6 motion. I would agree your honor, I would find that very unusual as well but these are not prison officials and these are not prisoners. These are civil detainees under the California Sexually Violent Predator Act. These are all civil, nothing criminal is going on here and that is why. But they are being detained. But they are being detained. That's what I'm trying to understand, what is, is that the operative difference? There's no punishment. There is no punishment, they are detained only for treatment and the plaintiff's allegations move into. Is that a legal question? Yes it is. It is purely a legal question in this regard. They've already finished their sentences. They have finished their sentences following the expiration of their sentences. The Department of Corrections references the individual over to the Department of Mental Health for determination of whether he meets the criteria or she meets the criteria to be committed as a sexually violent predator. If the Department of Mental Health and the Department of Corrections together determine that they do meet the criteria, the case is turned over to the district attorney who may or may not proceed. If the district attorney determines that they will proceed, the case goes to a probable cause hearing. If that probable cause is found that the person meets the criteria as a sexually violent predator, it goes to a jury trial requiring a unanimous verdict. If the jury returns a unanimous verdict that the person should be committed as a sexually violent predator, the person is then committed to the custody of the Department of Mental Health for treatment. Not the Department of Corrections. Only to the Department of Mental Health and only for treatment under the Sexually Violent Predator Act, which is modeled on the same Sexually Violent Predator Act that the Supreme Court found in Kansas v. Hendricks was a civil statute and as the Supreme Court found in Selling v. Young was a civil statute. These are all civil detainees and plaintiffs state so in their complaint that this is a civil statute and these plaintiffs are civil detainees. Therefore, criminal jurisprudence does not enter into this analysis. Therefore, qualified immunity must be found when the constitutional violation alleged is a criminal violation. The Eighth Amendment goes only to those who are. If you are civilly committed and you are, are you suggesting there's a tort remedy here? No, the proper remedy was. Tort while being detained as a predator. The proper. You say it's purely civil and yet. There are remedies. The plaintiffs' appellees have remedies for constitutional violations under the 14th Amendment to the United States Constitution. They do not have remedies under the Eighth Amendment, the Sixth Amendment, the Ex Post Facto and the Double Jeopardy clauses because those are criminal, only criminal. In addition, on the second level of analysis, the law that, I'm sorry, Your Honor, did you have a question? Yeah. The Eighth Amendment speaks of cruel and unusual punishment. Yes. What is the law that says that if you, if you label someone who is in, in being detained because of conduct, that that's, that, that, that, that if you label it civil, the Eighth Amendment doesn't apply? Your Honor, I do not have that case at the top of my head, but it is in our brief. And the Eighth Amendment has been held by the Supreme Court to apply only to the criminally confined. What do you think would happen if we took your people under the Department of, under control of the Department of Mental Health and we discovered that the Department of Mental Health decided that we were going to treat these people is to burn them with hot irons, not just make them smell bad things, but burn them with hot irons. We're going to show them pictures of the stuff we don't want them to do, and instead of making it smell bad in the room, which is very interesting, we're going to burn them. Do you think that the courts would have, that the cruel and unusual punishment aspect of that might not attach? No, Your Honor. The Fourteenth Amendment covers that type of a situation. Stalking the conscience, then, would have to go with. There may be a point at which a civil detainee may make a claim that they are being punished and not treated or not merely confined for the protection of society. But that claim would be brought under the Fourteenth Amendment of the United States Constitution because cruel and unusual punishment attaches only to prisoners held for punishment. But what does Guantanamo teach us about this? Excuse me? What does Guantanamo teach us about this for the recent Supreme Court decisions on indefinite detention where nobody's been charged with criminal conduct? Your Honor, I think the Guantanamo situation would be unrelated to this, but I must profess my ignorance to the Court on that line of cases. It is not one that I have reviewed or researched in regards to this particular issue, and I do not believe plaintiffs have researched or briefed. The treatment process that people go through, what, has five steps? Your Honor is familiar with the treatment process? Yes, there is phase one through five, five being released into the community. How many people have completed? As I stand here today, I believe there are three who have completed phase five and have been placed in the community. There are currently two persons in court in San Diego County, Mr. Badger and Mr. Hedge, who are seeking placement in San Diego County, and the Department of Mental Health is working with the authorities there. There is one other individual who is being ready to be placed in Los Angeles County as soon as a proper location can be found. They're starting to come out of this lengthy pipeline. Yes, those who are engaged in treatment can come out of the pipeline. If they don't engage in treatment, then what happens? If they don't engage in treatment, the possibility exists that they could self-heal, although that would be very surprising. If they don't engage in treatment, they are, a recommitment petition can be filed every two years, and every two years again requires a unanimous jury for continuing civil commitment. Thus, and some patients have been found to no longer meet the criteria after two years and have been released, Mr. Harrell. By juries. By juries or by the judge. They can waive a jury trial. Is it available under state law for these people if they're being burned or cruelly treated? Yes, Your Honor. Yes, there is a tort remedy under state law, and numerous patients have filed tort claims against both individuals, against individuals at ASH on the staff. But what is not available to these individuals is the opening of criminal law jurisprudence. In order to get them committed, what do you have to prove? That they meet the criteria of being a sexually violent predator. That is that they suffer from a specific mental disorder that causes them to be very likely to commit continuing sexual crimes if they are released. They also must have. Is anybody subject to this who hasn't committed sexual crimes? No, Your Honor. Your Honor, I was just about to say that the predicate for that is that they must have previously committed two or more sexually violent offenses. But this case before us today is only about qualified immunity as it attaches to defendants and the Eleventh Amendment as it attaches to the defendants as a whole and in their both official and individual capacities. The defense of qualified immunity at the threshold stage should be decided as early as possible in a litigation because that immunity is not only a defense to liability. It is a defense. Yes, but we have to take the allegations as true. That is correct, Your Honor. But the allegations is. If you take the allegations that these people are subject to cruel treatment, that's an allegation. I would think we have to take that as true. That is correct, Your Honor. But the allegations set forth in this complaint do not rise to the level to defeat a qualified immunity defense in that they are. The law is clearly established that you can treat people cruelly as long as you call it civil. No. Well, then what laws. They have the allegations in this complaint do not rise to the level that you have stated. The allegations are such that some of them are conclusory and those that are not conclusory allegations, in other words, those that do not say we are subject to unreasonable searches. Well, that without anything further, the one-sentence complaint do not rise to the level where the allegation violates clearly established law applicable to the plaintiffs. I think that's a good point. I think that's a good point to hear from the group. Let's see. Okay. I remember what the question was I was going to ask you, but all right, I'll save it for later. Thank you, Your Honor. I was going to ask you, why did you bring summary judgment motion on qualified immunity? Wouldn't that have been a much simpler way to do it? Your Honor, we're not yet complete with discovery. Expert discovery has not taken place. Summary judgment is a motion that will inevitably be brought. But, Your Honor, if the Second Amendment complaint was filed, the motion to dismiss is appropriate prior to a motion for summary judgment. I just asked. That's all. Okay. Good morning. May it please the Court. Katherine Davis of Latham and Watkins for Appellees. I'd like to address a couple of points in response to Mr. Murphy's argument. First of all, the complaint here alleges not only violations of the criminal amendments, the Sixth Amendment, the Eighth Amendment, ex post facto and double jeopardy, but more fundamentally it raises violations under the substantive due process clause of the Fourteenth Amendment, which we know clearly applies to the conditions of confinement that civil commitments endure. We know from Youngberg v. Romeo, Bell v. Wallfish, Jackson v. Indiana, and a whole litany of cases set out in the brief, that civil commitments, those people who have been civilly detained but who have not been convicted of a crime, cannot be subjected to conditions that amount to punishment. So that while there is an argument to be made that the criminal amendments may not apply to a situation where the act itself has been deemed civil, as is the case here, it cannot be argued that the substantive due process clause does not apply here. Fourteenth Amendment? Yes. The other side conceded that? Well, I think that the other side conceded that it could apply in theory but that it didn't apply in this case. Oh, I agree. Okay. And I would also argue that even with respect to the criminal amendments, although it is concededly a much weaker position, I don't think that it has been decided that in the case where conditions of confinement in the civil detention area are so cruel and unusual that they would constitute punishment. I don't think that that has been foreclosed by the Supreme Court. But, again, I would concede that the Fourteenth Amendment is the better vehicle here.  I recognize that the Supreme Court has held that qualified immunity should be decided at the earliest possible stage of the proceeding, but I would note that as far as I know, all the cases that the Court has considered have been summary judgment cases. With rare exception, the cases that this Court has considered have been summary judgment cases. We were ‑‑ we had concluded discovery in this case at the time the Second Amendment complaint was brought. It was brought only to add one defendant in his official and individual capacity. No substantive changes to the complaint had been made. Why are you bringing these charges against officials in their individual capacity? In their individual capacity? Well, the plaintiffs wanted to seek monetary relief, frankly. I'm sorry? You want damages from? That's very important to the class, yes. These are a class of over ‑‑ well, it started out to be 400. It's about 700 men now who are confined at Atascadero. I would point out that the statute has been in effect since 1996. Only a handful, as Mr. Murphy concedes, of the men have actually gotten through the five phases of therapy and gotten out. These are two‑year commitment terms. I don't know what you want us to take from that. Maybe it just means this is a bunch of terribly dangerous people. Well, I think what one takes from it, I think, is relevant to the due process argument. Again, to the extent that we know that civil commitments cannot be detained indefinitely without a showing of ‑‑ Well, they're not detained indefinitely. There's a whole process to make sure these are reviewed on a periodic basis. That's true. But to the extent there's no realistic opportunity for cure and release and to be ‑‑ Well, how do we know that? I mean, you're saying that, but how do we know that? I mean, some people are going through the process. Well, I think that would ‑‑ you're right. That would be something that could be more ‑‑ Maybe down the line. Later down the line. I mean, we're not at the summary judgment stage. I mean, the core of the case is the conditions of confinement. We're not challenging the act. We're not challenging it on its face or as applied. And even our indefinite confinement claim is a small part of what we're arguing here. I mean, the main point is that these individuals are civilly detained and are ‑‑ And you don't like the conditions. That's correct. For example, what about the conditions do you find offensive to the law? Well, for example, we know that under substantive due process, all the conditions have to be reasonably related to a nonpunitive legitimate goal. Ceiling tells us that the conditions and the restrictions have to be reasonably related to the purpose of the confinement. In this case, the purpose of the confinement is to treat and to incapacitate. Our argument is that the conditions here don't further either of those goals. Well, I asked you what they are. What they are. Oh, for example. Well, the complaint alleges, for example, that the conditions are more restrictive on privileges and access than the restrictions that apply to prisoners. That, in this circuit, necessitates ‑‑ And that's necessarily inconsistent with the purpose for which they're being ‑‑ It is, because it's unconstitutional to punish civil commitments. So, yes, it is necessarily. They're restrictive. What are the others? They're restricted. They are retaliated against for choosing not to participate in treatment. What do you mean retaliated against? Arbitrary and punitive reductions in access levels. They can't move off the unit unless they have a pass, a patient access level. It's basically a placard that tells ‑‑ So if they're refusing treatment? If they verbally refuse treatment, they'll get their pass levels reduced, which means they can't move off the unit, they can't move about the hospital. That violates somehow the 14th Amendment. Yes, the freedom of movement. Excessive searches, excessive uses of force that are unreasonable, for example. What do you mean by excessive searches? Again, retaliatory searches and seizures. People who won't go to treatment have their border searched? The fact that they're SVPs, they're stigmatized. Keep in mind that they are ‑‑ So you are attacking the Act. No, we're not. Maybe I'm heading this up the wrong way. Not only SVPs are at ASH. We have penal commitments, other civil commitments. The 6600 sexually violent predators are just one part of the population at ASH. So they are treated in a way, just by virtue of their status as sexually violent predators. I think we've seen enough in the criminal context to see what happens in prisons to people who are convicted. These abuses are similar. Exactly. So the complaint alleges that they are treated in a way that is worse than the other penal commitments and the civil commitments at ASH, and worse than prisoners. And I mean denial of privileges, inability to access the law library, strip searches, excessive four‑point restraints, forced medication in response to someone verbally saying, I don't want to go to treatment, or I object to your mandatory disciplinary procedure. Whatever the incident happens to be, the complaint is quite detailed. And I can refer you to excerpts if you like. But the basic point is that all of the restrictions and all of the reactions are based on ‑‑ Or is it clearly established in law that these conditions are inappropriate, such that a reasonable person mandated with these responsibilities would understand that? I'm talking qualified immunity. Okay. Well, Youngberg versus Romeo, Bell versus Wolffish, Jackson versus Indiana, all stand for the proposition that those who are civilly detained, not yet convicted of a crime, for the very reason Mr. Murphy says, the Eighth Amendment and the Sixth Amendment don't apply. These are people who have been convicted of a crime. But they've served their ‑‑ they've served their time. Right. And they've been ‑‑ Then they're civilly committed in a whole different proceeding, which we know has been deemed civil. They're analogous. You seem to be analogizing them to pretrial detainees. And involuntarily civilly committed. And this Court recently, we have submitted a letter to supplement the briefs, but Jones versus Blanes in December of 2004. So it makes no difference that they've had multiple prior convictions that satisfy the predicate for violent sexual offenders? I think that if the courts have found, which obviously they have, that these acts are necessarily civil on their face and as applied, and that they don't violate due process to the extent that there's punishment without notice, then yes, one has to say that the commitment, the new civil commitment starts a new phase. They are to be treated as all other civil commitments. If ‑‑ and at any rate ‑‑ That ignores the reality of why they're there. That utterly ignores the reality of why they're there and how they qualify to be there. As compared to people who haven't been convicted, pretrial detainees, they stand on a completely different footing. I mean, I don't see how you can just sever the reason why they're there and the process that got them there. Well ‑‑ Which is what you're trying to do. I mean, it's an excellent point. I just think that our argument is the right argument. I think that it's ‑‑ I don't know how to say it other than it's unfair to say that the act is civil for purposes of denying us the ability to proceed under the ‑‑ I think that you're getting lost in labels instead of the reality of the program. Well, I'm not sure who's getting lost in labels. These ‑‑ the cases that you're talking about relate to a completely different situation. This is a long and complex process that's been set up by California law. It starts out with predicate of convictions. And then once you've served your time on these things, then you have to go into another thing, but it's related and dovetailed in with jury trials and all kinds of ‑‑ Well, if I may refer the Court to Seeling v. Young, the Court there did invoke Fuchsia and Jackson and Youngberg and Bell and said that the ‑‑ in the context of civil commitment, and that was an SVP statute, as you know, that the ‑‑ both the purpose and the conditions of confinement must be reasonably related to a legitimate non‑punitive purpose, to the purpose of the confinement. And the purpose of the confinement is to treat and incapacitate. Yes, you can incapacitate and restrain liberty. Can you put someone in four‑point restraints for saying, I don't want to go to treatment today? Arguably, that's not reasonably related to the purpose of the treatment or the incapacitation. Well, if Judge Trott is correct, if that line is correct, that this is really a continuation  of punishment. Yes, but my argument is not that it's a continuation of punishment. It's that you cannot ignore how they got there in terms of regarding the way in which they're treated when they are there. And I would agree, except for Seeling v. Young, the Supreme Court says that the conditions and the duration must be reasonably related to the purpose of the confinement, and that's a fact. We know as a fact that the purpose of the confinement is to treat and incapacitate, not to punish. At least you'd rather see this here on summary judgment. Absolutely. I'd love to be on summary judgment. Yes, Your Honor? What you're really, what you're really, your main concern is the way they're treated at Toscadero has all sorts of other people who are there, not only the sex offenders, but others who are there, certain people who have been found guilty, not guilty by reason of insanity. There's a whole list of them. Yes. And what is it that you think the final, what the solution ought to be? Is it a separate facility ought to be built for your clients? Well, that's a good question. I think that you do raise an important problem here, which is that a lot of the policies don't distinguish between a penal commitment, someone who has been convicted of a crime, and the civil commitments, and that's a problem. Could that be solved by the, the more fundamental problem is that notwithstanding whether the policies apply with equal force to penal commitments and civil commitments, we still have to have a scenario where these civil commitments are treated in a way that's not punitive. So whether that happens at Ash or at a separate facility, I think the rule remains the same. Do you have an equal protection? We do. We do. May I, I need to make one correction in our argument, and I don't know if this is the appropriate place to do it or if I should submit. I think you better do it now. I'll do it now. Or I'm going to hold your piece. It's with respect to the Eleventh Amendment argument, and we made a mistake in our brief that I need to bring to the Court's attention. Mr. Murphy has argued that our first, second, and tenth claims are barred by the doctrine of, by the Eleventh Amendment to the extent we're seeking to enforce state law claims. In fact, we are seeking to enforce state law claims in those three causes of action. I think our brief says that we are not, and that's a mistake. What that means is that I think that appellants are correct with respect to our claims against the state officials for violations of state claims in their official capacities, but under Pena v. Gardner, it would not bar our claims against the state officials for the state law claims acting in their individual capacities. And, of course, qualified immunity wouldn't apply to those either. So I apologize for the error. I wanted to bring it to the Court's attention. You want to bring every claim you can. I don't want to make a mistake. A couple of quick points. The Eighth Amendment not being applicable to civil committees is set forth in and Youngberg v. Romeo. Appellee's counsel indicated that all these cases come before this Court on appeal on summary judgment. That is incorrect. Sygart v. Gilly, a Supreme Court case cited in appellant's brief, was a motion to dismiss, and in the alternative for summary judgment, but it was a motion to dismiss on qualified immunity grounds prior to the commencement of discovery. Polk County also cited in appellant's brief. What you're saying is you can't use the Eighth Amendment, et cetera, to measure any of these things. You have to use the Fourteenth Amendment standard to measure what's going on? Yes. And what's the Fourteenth Amendment standard? Equal protection and due process. And shocking the conscience, things like that? Yes. In this case, that would be, for the civil detainee, that would be correct. The other side identifies a lot of practices that sound very punitive and unnecessary to treatment. Wouldn't those qualify under the Fourteenth Amendment standard, at least at a 12B6 stage? They might very well have alleged facts that may violate a constitutional amendment. Right. That is possible, and this Court will determine that. But what they have not done is alleged facts to support all of the claims that they have made, most significantly those arising in the criminal law jurisprudence. Plaintiff's counsel also mentioned a letter to supplement the brief that they filed. I have not received that and would ask that they forward it to me. What is the relief that you want? Excuse me? What is the relief that you want? I guess I don't know. We would want the claims against the defendants in their individual capacities to be dismissed, based on qualified immunity grounds, for the reasons that the law alleged that they have violated are not applicable to the plaintiffs. The second point, that the law has not been clearly established vis-à-vis these plaintiffs, such that the defendants would have a reasonable objective, which is the initial threshold question, an objective legal reasonableness standard, to know that what they are doing violates the Constitution. So it's only the damaged claims that you're? Yes, Your Honor. The underqualified immunity and, of course, the Eleventh Amendment that counsel has indicated they are not seeking damages against State officials in their official capacity. They have stated that in their brief. However, they are? Are you conceding that the complaint states a cause of action for injunctive relief under Ex parte Young? I would not be conceding that, Your Honor, but I would submit that they may have successfully pled a claim for injunctive relief. And the State of California understands claims for institutional reform, and we would deal with those. But the qualified immunity and the claims against individuals for their money, for the money damages is an unprecedented event for a statute recently enacted, and it's not even the director of the department who is the defendant. It is staff people and the executive director of the hospital. I might also point out to the court that the appellees indicate they are not making an as-applied challenge to the statute. That is incorrect. Their complaint is filled with the term as-applied, and the as-applied challenge to a statute to move it from the civil to the criminal jurisprudential format has been disavowed first in Hudson and then followed by selling. In their briefing to this Court, they indicated that they are not using as-applied. They are using implemented. Hudson dealt specifically with implementation, saying that you cannot move a civil statute to the criminal realm of constitutional jurisprudence based on its implementation. Selling reached the same conclusion. Yeah, okay. I'll just make this observation. You've just about used your time. Yes, Your Honor. I'll just make this observation. Some, to me, was one member of the panel. A lot of these would be easier to grapple with if they were on summary judgment. That's true, Your Honor. But the State should not have to spend time and money dealing with claims that shouldn't get past the motion to dismiss stage. And it is a burden on the State. You've already done all of discovery. It's not yet complete, Your Honor. So you've got more time on that. The plaintiff just said that she had finished. Merit-based discovery, expert discovery is going on. Supplemental production of documents is proceeding, and that will amount to another $200,000 or $300,000. But it is the legal time and effort involved in defending claims that have no business in a litigation that we seek to avoid.  Thank you, Your Honor. If the target is submitted for decision, we'll hear the last case on the calendar, which is Blau v. YMIG. Yes, we've given you as much time as we can.
judges: Schroeder, Pregerson, Trott